**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**DASHAWN M. HUGHES,**

     **Plaintiff,**

     **v.**                      **CASE NO.  22-3309-JWL-JPO**

**JIM GRAHAM,  et al.,**

     **Defendants.**

**<u>MEMORANDUM AND ORDER TO SHOW CAUSE</u>**

Plaintiff DaShawn M. Hughes is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Amended Complaint that are discussed herein.  In the alternative, Plaintiff may file a complete and proper second amended complaint curing these deficiencies.  If Plaintiff fails to do so in the time allotted by the Court, this matter may be dismissed without further prior notice to Plaintiff.

**I.  Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is currently confined at the Larned Correctional Mental Health Facility in Larned, Kansas ("LCMHF").  Plaintiff has filed motions seeking leave to file an amended complaint (Docs. 4, 6). The Court grants the motions and will screen Plaintiff's Amended Complaint at Doc. 3.[1]

Plaintiff alleges in his Amended Complaint that on November 23, 2021, Defendant Paul Cory approached Plaintiff in a very hostile and aggressive manner in the hallway and ordered Plaintiff into the Clinic area to submit to a drug test (U/A).  (Doc. 3, at 7.)  When Plaintiff stated that he does not do drugs, Defendant Cory tried to coerce a statement from Plaintiff regarding drugs, and when Plaintiff refused to speak to him, Defendant Cory insinuated that Plaintiff failed

---

[1]  Although Plaintiff attaches his Amended Complaint at Doc. 6–2, he had previously submitted the Amended Complaint and it is docketed at Doc. 3.

the U/A and continued to attempt to further coerce Plaintiff into making a statement.  *Id*.  When Plaintiff refused to talk, Cory stated "well now you have a dirty U/A to deal with and I will be sending you to Ad-Seg since you don't wanna play ball."  *Id.*

Plaintiff alleges that Cory then authored a completely false Disciplinary Report ("DR") and used it as his justification for placing Plaintiff in Administrative Segregation ("Ad-Seg").  *Id*. Plaintiff alleges that this was all done as retaliation.  *Id*.  Plaintiff filed a complaint against Defendant Cory regarding Cory's unprofessionalism in making knowingly false allegations against Plaintiff and filing a DR that Cory knew was false and unsupported by evidence.  *Id*.

On December 23, 2021, Plaintiff was briefly transferred to the Hutchinson Correctional Facility ("HCF") while his DR was still pending.  *Id*.  Plaintiff requested that the Disciplinary Board Staff send the U/A drug test out to a lab for secondary testing prior to Plaintiff's DR hearing.  *Id*.  Plaintiff alleges that the secondary testing determined that his drug test was clean and did not contain methamphetamine.  *Id*.  Plaintiff's DR was resolved with a "not guilty" finding.  *Id*.

Plaintiff alleges that on December 8, 2022, Defendant Jim Graham was standing in the central hallway of LCMHF and engaged Plaintiff in a conversation by stating "I'm well aware of what you are doing in my facility Hughes and I'm gonna continue having my boys persue [sic] you and mark my words boy, we'll get you one way or another – that's a promise because we don't like your kind here."  *Id*.  Plaintiff took these comments as racist and intended to intimidate and scare Plaintiff.  *Id*.  Plaintiff responded to Graham that "yeah, I do a little gambling on sports games and that's it sir."  *Id*. at 8.  Graham responded "okay – we'll see."  *Id*.  Plaintiff alleges that he "walked away knowing that he had just been racially threatened by Graham."  *Id*.

Plaintiff alleges that on December 11, 2022, he asked Defendant Bieberle if they were going to release Plaintiff out of the F-1 Transitional Housing Unit and into General Population at LCMHF. *Id*. Plaintiff alleges that Bieberle stated "mother fucker if I have any say in the matter the answer is never- no way. Besides boy I and my friends have much better things in store for your black ass – you'll see soon enough." *Id*. Plaintiff stated that he would be in medium custody in a few months and asked to be sent back to HCF. Bieberle responded "oh, you'll be returning soon enough once we're done with you here boy." *Id*.

Plaintiff alleges that on December 13, 2022, Plaintiff was awakened by Defendants Joel East and Shawn Pokorski standing inside Plaintiff's cell, with Pokorski stating "wake up black boy the white man is here to have some fun." *Id*. Defendants laughed and then East stated "get your black ass up and get naked boy, today has been a long time coming for you" and he ordered Plaintiff to submit to a strip search. *Id*. After the strip search, Pokorski ordered Plaintiff to walk out to the dayroom and stay there until the cell search was completed. *Id*. When Plaintiff asked why this was happening, East stated that they "got a green-light on your ass boy from Cory and Schmidt in EAI along with Graham and Bierberle, so we're here to make sure you have a really fucked up day." *Id*. East then stated "targeted search boy." *Id*. When Plaintiff asked if a captain could come to the unit, Pokorski stated "ain't no one coming to help your black ass so sit down and shut the fuck up, or we can put you in cuffs and take a trip to the showers." *Id*. After the search, East told Plaintiff that it "looks like you'll be going to seg now mother fucker we got you." *Id*. at 10. When Plaintiff stated that there was nothing in his cell, East responded "oh trust me boy I'm sure I am gonna put you there on a meth case." *Id*.

Plaintiff received a DR indicating that wet paper was found containing an unknown substance that allegedly later tested positive for methamphetamine. *Id*. Plaintiff alleges that

East's shakedown and search report listed every item found and removed from Plaintiff's cell and did not state anything about "wet papers containing meth" being found or removed from Plaintiff's cell.  *Id*.  Plaintiff alleges that East fabricated the report as retaliation.  *Id*.

As Count I, Plaintiff alleges cruel and unusual punishment in violation of the Eighth Amendment.  *Id*.  As Count II, Plaintiff alleges an equal protection violation and racial discrimination. *Id*. at 11.  Plaintiff alleges "race-based retaliation" in Count III.  Plaintiff names as defendants:  Jim Graham, Major and Chief of Security at LCMHF; Paul Cory, Enforcement, Apprehension and Investigation (EAI) Supervisor at LCMHF; Miranda Schmidt, Special Agent EAI Investigator at LCMHF; Shawn Pokorski, Correctional Counselor I at LCMHF; Joel East, CS II Disciplinary Supervisor at LCMHF; Ronald Bieberle, CS III Captain at LCMHF; and Jeff Byrum, Classification Administrator at LCMHF.

Plaintiff fails to state a request for relief in his Amended Complaint.  In his original complaint, Plaintiff sought an internal investigation of all LCMHF staff, for the LCMHF administration to be held accountable for discrimination and unprofessional practices, and that the chain of custody on the papers found in the search detailed above "be established and preserved." (Doc. 1, at 5.)

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New*

*Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

Plaintiff alleges that various defendants acted in a threatening, aggressive, or unprofessional manner.  The Tenth Circuit has found that "[m]ere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'" *Alvarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (unpublished) (finding no constitutionally protected right where plaintiff claimed guard antagonized him with sexually inappropriate comment), *quoting Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir. 1992)).

Plaintiff also alleges racial discrimination through the use of racial slurs. "The Equal Protection Clause 'keeps governmental decision makers from treating differently persons who

are in all relevant respects alike.'" *Soskin v. Reinertson*, 353 F.3d 1242, 1247 (10th Cir. 2004) (*quoting Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). "[T]o state a claim under § 1983 for violation of the Equal Protection Clause, a plaintiff must show that he or she is a member of a class of individuals that is being treated differently from similarly situated individuals who are not in that class." *Hunnicutt v. DeSantiago*, 429 F. Supp. 3d 905, 916 (D.N.M. 2019) (*citing see SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012)). The "[c]lass of one doctrine focuses on discrimination not between classes or groups of persons, as 'traditional' equal protection doctrine does, but on discrimination against a specific individual." *SECSYS*, 666 F.3d at 688 (citation omitted). Plaintiff has not shown that he (or a class in which he is a member) was "intentionally treated differently from others similarly situated." *Id.* (citation omitted).

Plaintiff, as an African-American, is a member of a protected class, and the mistreatment he asserts is being subjected to racist remarks and "race-based retaliation." However, as stated above, the Tenth Circuit has made clear that mere verbal threats or harassment do not rise to the level of a constitutional violation unless they create terror of instant and unexpected death. While the racist comments to Plaintiff are "deplorable and unprofessional," they do not constitute an Equal Protection violation. *See Williams v. Levansailor*, 153 F.3d 730 (Table), 1998 WL 426865, at *1 (10th Cir. 1998) (citations omitted). Plaintiff has not described how he was otherwise treated differently than non-African-American inmates. *See Hunnicutt*, 429 F. Supp. 3d at 918. Because Plaintiff includes no other allegations of racial discrimination beyond racist remarks from correctional officers, he does not state a claim under the Equal Protection Clause. *Id.*

Plaintiff states that the search of his cell was "targeted" and that he has been subjected to race-based retaliation. Plaintiff's factual allegations suggest that the search was the result of the

officers' belief that Plaintiff was participating in illegal activity, not based on Plaintiff's race. Although Plaintiff asserts a claim of "race-based retaliation," he alleges that he is being retaliated against for filing complaints against staff and for filing this action.  (Doc. 3, at 11, Doc. 7.)

Plaintiff fails to state a claim of retaliation. "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted).  The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements:  (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted).  Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).  "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff's claims of retaliation are subject to dismissal for failure to allege adequate facts in support of the claims.  Plaintiff's allegations regarding retaliation are generally conclusory, lacking facts to demonstrate any improper retaliatory motive.

Although Plaintiff failed to include a request for relief in his Amended Complaint, the Court will address his request for relief in his original Complaint.  To the extent Plaintiff seeks an internal investigation, the Court is without authority to grant such relief.  *See  Nicholas v. Hunter*, 228 F. App'x 139, 141 (3rd Cir. 2007) ( "The remaining relief requested is not available as the District Court lacks authority to order a federal investigation and prosecution of the defendants or the termination of their employment."); *Goulette v. Warren*, No. 3:06CV235-1-MU, 2006 WL 1582386, at n.1 (W.D. N.C. June 1, 2006) ("The Court notes that even if Plaintiff's claims prevailed in this case, this Court would not, based upon this law suit, have the authority to order the termination of the Defendant's employment or to grant Plaintiff an immediate, early release from jail."); *Dockery v. Ferry*, No. 08-277, 2008 WL 1995061, at *2 (W.D. Pa. May 7, 2008) (finding that the court cannot issue an order which would direct a local government to terminate a police officer's employment) (citing *In re Jones*, 28 F. App'x 133, 134 (3rd Cir. 2002) ("Jones is not entitled to relief . . . [S]he asks this Court to prohibit the State of Delaware from filing charges against her.  The federal courts, however, have no general power in mandamus action to compel action, or in this case inaction, by state officials.")); *Martin v. LeBlanc*, No. 14-2743, 2014 WL 6674289, at n.1 (W.D. La. Nov. 24, 2014) (finding that where plaintiff requested an investigation, the termination of the defendants' employment and the closure of the prison, "[s]uch relief is not available in this action"); *Merrida v. California Dep't of Corr.*, No. 1:06-CV-00502 OWW LJO P, 2006 WL 2926740, at n.1 (E.D. Cal. Oct. 11, 2006)

(finding that where plaintiff prays for the termination of defendant's employment, "the court cannot award this form of relief to plaintiff) (citing 18 U.S.C. § 3626(a)(1)(A)).

The Court also notes that any request for compensatory damages would be barred by 42 U.S.C. § 1997e(e) unless Plaintiff alleges a physical injury.  Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

## IV.  Motion for Appointment of Counsel

Plaintiff has filed a motion for appointment of counsel, arguing that he has been unsuccessful in obtaining counsel, he is financially unable to afford counsel, he has very little education, he has a learning disability, and he has been diagnosed with ADHD.  (Doc. 5, at 2–3.)

The Court has considered Plaintiff's motion for appointment of counsel.  There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995).  The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).  "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)).  It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. The Court denies the motion without prejudice to refiling the motion if Plaintiff's claims survive screening.

## V. Motion for Emergency Temporary Restraining Order

Plaintiff has filed a Motion for Emergency Temporary Restraining Order (Doc. 7), alleging that he was retaliated against on January 16, 2023, when two officers searched his cell, claimed in reports that "paper drugs" were found, and placed Plaintiff in long term Ad-Seg. (Doc. 7, at 1.) Plaintiff alleges that Defendants are retaliating against him because he filed this case. *Id*. Plaintiff alleges that Defendants are refusing to allow Plaintiff to have the "paper drugs" sent to an outside lab to perform a secondary test at Plaintiff's expense. *Id*. Plaintiff asks this Court to order the transfer of Plaintiff to another KDOC facility. *Id*.

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

Plaintiff suggests that he will not receive fair treatment during his disciplinary proceedings and that secondary testing should be performed on the "paper drugs" found in his cell.  However, Plaintiff notes in his Amended Complaint that secondary testing was performed as part of his prior disciplinary proceedings and he was found not guilty.  *See* Doc. 3, at 7.  Plaintiff's allegations do not establish that injury is certain and not theoretical, or more than merely feared as liable to occur in the future.  "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."  *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).  A preliminary injunction is only appropriate "to prevent existing or presently threatening injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future."  *State of Connecticut v. Commonwealth of Massachusetts,* 282 U.S. 660, 674 (1931).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal.  *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).  Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation.  18 U.S.C. § 3626(a)(2).  Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above.  *Little*, 607 F.3d at 1251.  Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must

show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal.

## VI. Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Amended Complaint should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file a complete and proper second amended complaint upon court-approved forms that cures all the deficiencies discussed herein.[2]  Plaintiff is given time to file a complete and proper second amended complaint in which he (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

**IT IS THEREFORE ORDERED THAT** Plaintiff's motions for leave to file an amended complaint  (Docs. 4, 6) are **granted.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel (Doc. 5) is **denied without prejudice.**

---

[2] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.  Plaintiff must write the number of this case (22-3309-JWL) at the top of the first page of his second amended complaint and he must name every defendant in the caption of the second amended complaint.  *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the second amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances.  Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Emergency Temporary Restraining Order (Doc. 7) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **February 24, 2023,** in which to show good cause, in writing to the undersigned, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **February 24, 2023**, in which to file a complete and proper second amended complaint to cure all the deficiencies discussed herein.

The clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated January 27, 2023, in Kansas City, Kansas.**

<u>**S/  John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**